

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00213-CV

_____

SERVICE CORPORATION INTERNATIONAL, GREGORY W. SPENCER
FUNERAL DIRECTORS, AND DIGNITY MEMORIAL NETWORK, INC.,
Appellants

V.

TONYEKA WILLIAMS-BIRDOW, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-320822-20

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Gregory W. Spencer Funeral Directors (Spencer)[1] appeals from the trial court's order regarding its motion to compel arbitration of claims brought against it by Appellee Tonyeka Williams-Birdow (Williams-Birdow). In three issues, Spencer complains of the trial court's (1) striking its amended motion to compel arbitration, (2) striking its exhibit submitted as evidence in its brief and in support of its amended motion, and (3) denying its motion to compel arbitration; and in its fourth issue, Spencer argues that we should consider de novo whether the arbitration agreement is enforceable. Holding that the trial court abused its discretion by striking the amended motion and exhibit but overruling the challenge to the denial of the original motion to compel arbitration, we will reverse and remand for proceedings consistent with this opinion.

### II. BACKGROUND

This case arises out of the death of Williams-Birdow's husband, Albert Birdow, Jr. (Birdow), who passed away on November 1, 2018. According to Spencer, the day

---

[1]Only Spencer has filed a notice of appeal, although the pleadings and the briefs also refer to Service Corporation International (SCI) and Dignity Memorial Network, Inc. (Dignity) as appellants. In her pleadings, Williams-Birdow alleged that Spencer is owned by Dignity, which is in turn owned by SCI. Although these entities were defendants below, Spencer's answer contended that they were not "the proper defendant[s] in this matter." The subject ruling concerns the denial of a motion to compel arbitration filed only by Spencer. For all of these reasons, we consider Spencer as the only appellant.

that Birdow died, Williams-Birdow contacted it and requested that Birdow's body be removed from her home. On the same day, the body was removed and taken to Spencer's facility. The following day, Williams-Birdow viewed Birdow's body at the facility and signed an "Identification Acknowledgement" and an "Authorization to Embalm at Funeral Establishment or Other Location."

As alleged in the pleadings, Williams-Birdow requested that she see the body in private before any services because she was not home the day Birdow died. When Williams-Birdow arrived at the funeral home, "there was a strong smell." When she got to the back of the funeral home, "Birdow's body was completely unrecognizable" and "[h]is body was bloated and distorted because he was left in an open room and not refrigerated."

The following day, the body was moved to a mortuary service and then to the Tarrant County Medical Examiner's office for autopsy. On November 8, after completion of the autopsy, the body was transported back to the mortuary service. According to Williams-Birdow's pleadings, none of these transports were discussed with or approved by her. However, she did sign an "Authorization for Cremation and Disposition" on the same day, allowing the transfer of the cremated remains from the mortuary service back to Spencer. According to Williams-Birdow, she "was forced to cremate her husband because the condition of his body could not be repaired enough to have his body inside of the church or to have an open casket."

3

On November 9, Williams-Birdow signed a document entitled "Statement of Funeral Goods and Services Selected/Purchase Agreement" (Contract), which contained the following paragraph:

**BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL.**

The document was also signed by Andrea Q Franklin on behalf of "Seller," who was identified as Spencer.

Williams-Birdow ultimately filed suit against Spencer, alleging causes of action for negligence, gross negligence, negligence per se, fraud and forgery, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, and breach of the Texas Deceptive Trade Practices Act. Among her claims, she alleged that Spencer owed her "a duty to properly care for her husband's remains" and that it had "left [Birdow's body] unrefrigerated which caused him to decompose at an accelerated rate," which in turn caused her to suffer "insurmountable damages because she had to see her husband's body in its bloated state, [and] she was left with no option but to have her husband cremated."

Spencer answered and later filed its "Defendant's Motion to Compel Arbitration and Abate Suit" (Motion). Attached to the Motion were (1) the Contract, which importantly consisted of only two pages; (2) "Plaintiff's Third Amended Petition"; (3) the "Identification Acknowledgement"; (4) the "Authorization to

4

Embalm at Funeral Establishment or Other Location"; (5) the "Authorization for Cremation and Disposition"; and (6) a release that was signed by Williams-Birdow on November 10, 2018. The Motion was set for hearing on March 31, 2022.

Prior to the hearing, Williams-Birdow filed a response to the Motion, alleging that the arbitration agreement in the Contract was unenforceable because (1) "it does not meet the interstate commerce requirement under the Federal Arbitration Act or requirements under the Texas Arbitration Act," (2) "it is not a valid contract due to unconscionability," (3) "it is vague," and (4) Spencer "has substantially invoked the judicial process to [Williams-Birdow's] detriment and thus waived the right to compel arbitration." Spencer filed a reply to the response which attached March 2022 affidavits of Warren A. "Tony" Lynch and Tomekco Webster as well as an email from Williams-Birdow's attorney. The affidavit of Lynch—an employee of SCI—explained the business operations of Spencer, including the names of companies referenced in the Contract and other documents signed by Williams-Birdow. The affidavit of Webster—also identified as an employee of SCI—provided details of the execution of the Contract by Williams-Birdow and Spencer and stated that the Contract was signed by all parties at Spencer's offices rather than "in the limo on the way to [Birdow's] funeral" as alleged by Williams-Birdow's attorney in an email.

At the March 31 hearing on the Motion, the trial court raised questions regarding whether part of the Contract was missing and whether the arbitration clause was too vague to be enforceable. Williams-Birdow's attorney argued that there were

5

"terms and conditions on the backside" of the Contract that were omitted and "could limit the terms of enforcement or could waive arbitration." Indeed, directly above the arbitration clause in the two-page Contract, were the following words: "**SEE OTHER SIDE FOR TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT.**" In response to this argument, the trial court stated, "Y'all need to provide briefing on this issue." The trial court continued, "My concern is that if there were no terms and conditions that were attached to this, you're saying that you don't even know if they existed, and then this is so vague, I want something saying that it can be that vague and still be enforceable." The trial court added, "I mean, I understand they didn't provide the terms and conditions, so if you want to talk about that. This is too vague." Williams-Birdow's attorney also pointed out that Spencer's "head honcho" was deposed the previous day and stated "that this contract that they're trying to enforce was rescinded and there was a new contract." While Spencer's attorney disputed this account of the deposition, the trial court reserved its ruling and gave the parties "two weeks to get the deposition transcribed and get me something showing that she said that it was rescinded and that there is no contract currently" and "if you want to provide some kind of briefing on the issue of vagueness on the arbitration clause, then I'll look at that." The trial court ultimately set April 15 as the deadline to provide briefing and stated that the new hearing would be by submission after the deadline.

6

On April 12, Spencer filed its "Defendant's Amended Motion to Compel Arbitration and Abate Suit" (Amended Motion) as well as its "Brief on Vagueness and Ambiguity in Support of Defendant's Amended Motion to Compel Arbitration and Abate Suit" (Brief on Vagueness and Ambiguity). Attached to the Amended Motion were several documents. First, the Contract was again attached, but this time it consisted of four pages, including the "Terms and Conditions" referenced at the March 31 hearing. An additional arbitration clause was contained on page three of the Contract. It provided:

> **ARBITRATION: YOU AGREE THAT ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION OF AN APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND PROCEDURES UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR**

**AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, EXCEPT AS MAY BE REQUIRED BY LAW. NEITHER PARTY NOR AN ARBITRATOR MAY DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION HEREUNDER WITHOUT THE PRIOR WRITTEN CONSENT OF BOTH PARTIES.**

Further terms of the arbitration agreement were found on page four of the Contract:

> **ARBITRATION**: You agree that any dispute, controversy or claim arising out of or relating to this Agreement shall be submitted to and finally resolved by mandatory and binding arbitration in accordance with the rules of the American Arbitration Association. The arbitration shall be conducted by one arbitrator selected by mutual agreement of the parties and shall occur in the city or county in which this Agreement was executed. The prevailing party in any such arbitration shall be entitled to recover its reasonable costs and attorneys fees as part of any award entered therein, and judgment may be entered upon any arbitration award in any court having jurisdiction.

The "Terms and Conditions" also included the following paragraph:

> **ENTIRE AGREEMENT:** This Agreement contains all terms which have been agreed upon by us and you relating to the goods and services listed on the Statement of Funeral Goods and Services Selected/Purchase Agreement. This Agreement replaces all other discussions and agreements, whether oral or written, relating to those goods and services. No subsequent discussion or agreement can change the terms of this Agreement unless it is written and is signed by both us and you.

Several additional exhibits were attached to the Amended Motion, including "Plaintiff's Third Amended Petition," April 2022 affidavits of Lynch and Franklin, the "Authorization to Embalm at Funeral Establishment or Other Location," the "Authorization for Cremation and Disposition," and a release. The affidavit of Lynch

8

clarified that the Contract consisted of four pages and again explained the business operations of Spencer, including the names of companies referenced in the Contract and other documents signed by Williams-Birdow. The affidavit of Franklin—identified as Spencer's "embalmer and funeral director"—set out details of the execution of the various documents by Williams-Birdow.

On April 18,[2] Williams-Birdow filed her "Plaintiff's Brief on Vagueness in Support of Plaintiff's Response to Defendant's Motion to Compel Arbitration and Abate Suit, Plaintiff's Objections to Defendant's Brief Evidence, and Plaintiff's Motion to Strike Defendant's First Amended Motion to Compel Arbitration and Abate Suit." In the brief, Williams-Birdow argued that the two-page Contract in Spencer's Motion was "too vague to be enforceable" because it provides "no guidance on which arbitration forum to utilize, which set of arbitration rules that would govern the proceeding, the number of arbitrators, whether or not the arbitration is binding, etc." In addition, she contended that the Contract was "unilaterally renegotiated and rescinded in favor o[f] a new contract that only covered goods/merchandise and not goods plus services." Williams-Birdow moved the trial court to strike Spencer's Amended Motion "because the deadline for amendments or responses to that motion has passed and [Spencer's] amendment was not timely." Williams-Birdow also objected to "Exhibit 1" (the four-page Contract) to Spencer's brief because it was not

---

[2]Although the trial court set April 15 as the deadline to file briefs, no party has raised a timeliness issue regarding Williams-Birdow's brief.

9

a true and correct copy of the contract; there is no business records affidavit to authenticate it; "there are severe irregularities on the pages that make it apparent that pages 3 and 4 are not part of the same document as pages 1 and 2"; and Webster's deposition testimony "directly contradicts the statements in her affidavit" and "therefore negates any authentication" of the exhibit. In support of her arguments, Williams-Birdow attached portions of the depositions of Webster and Lorna Downs, another employee of Spencer.

On April 19, a notice of hearing on the Amended Motion was filed, setting the hearing for May 27. On May 5, an amended notice of hearing was filed, changing the hearing date to June 16. Before a hearing was held on the Amended Motion, the trial court signed an order[3] on May 18 (1) denying Spencer's Motion, (2) striking Spencer's Amended Motion, and (3) striking Exhibit 1 (the Contract consisting of four pages) to Spencer's Brief on Vagueness and Ambiguity. Spencer appealed from this order. Spencer requested findings of fact and conclusions of law and gave notice of past due findings of fact and conclusions of law, but none were filed.

## III. DISCUSSION

On appeal, Spencer challenges the trial court's order (1) striking its Amended Motion, (2) striking its Exhibit 1—the four-page Contract—submitted as evidence in its Brief on Vagueness and Ambiguity, and (3) denying its Motion. In what is labeled

---

[3]In its brief, Spencer states that the motion to strike was never set for hearing and the trial court's ruling was "without prior notice to the parties."

as its fourth issue, Spencer contends that we should consider de novo whether the arbitration agreement is enforceable.

## A. Striking the Amended Motion and Evidence

With regard to the first two issues, Spencer contends that by striking the Amended Motion and evidence, the trial court "denied [Spencer] the opportunity to establish the existence of a valid arbitration agreement" and abused its discretion "by ignoring applicable contract interpretation principles." Williams-Birdow responds that the trial court did not err by striking the Amended Motion because it violated Texas Rule of Civil Procedure 63, which limits the ability to amend pleadings within seven days of trial. With regard to the four-page Contract, Williams-Birdow contends that it was not authenticated and that pages three and four were not part of the agreement.

### 1. Standard of Review for Striking the Motion and Evidence

We review a trial court's ruling on a motion to strike[4] amended pleadings for an abuse of discretion. *Strange v. HRsmart*, 400 S.W.3d 125, 131 (Tex. App.—Dallas 2013, no pet.); *see Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g) (motion to strike petition in intervention); *Wells v. Best Ins.*

---

[4]We note that there is no rule specifically authorizing a motion to strike a motion to compel arbitration. *See Rodriguez v. U.S. Sec. Assocs., Inc.*, 162 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (stating that a motion to strike used to dismiss claims is an "unauthorized procedural vehicle"); *see also O'Carolan v. Hopper*, 414 S.W.3d 288, 297 (Tex. App.—Austin 2013, no pet.) ("Although the rules of civil procedure do not provide for a motion to strike pleadings (except in a motion for sanctions) . . . .").

*Servs., Inc.*, No. 13-09-00236-CV, 2010 WL 4264792, at *2 (Tex. App.—Corpus Christi–Edinburg, Oct. 28, 2010, no pet.) (mem. op.) (motion to strike deemed admissions).

A trial court's rulings admitting or excluding evidence are also reviewable for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

### 2. Applicable Law Regarding the Motion

Section 171.021 of the Texas Civil Practice and Remedies Code governs proceedings to compel arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.021. If a party opposing a motion to compel denies the existence of the arbitration agreement, the trial court must "summarily determine that issue" and order arbitration if it finds such an agreement exists. *Id.* § 171.021(b). Whether or not an evidentiary hearing is held depends on the circumstances. *In re MP Ventures of S. Tx., Ltd.*, 276 S.W.3d 524, 528 n.4 (Tex. App.—San Antonio 2008, orig. proceeding). If material facts are uncontroverted, the trial court may decide whether to compel arbitration based on the affidavits, pleadings, discovery, and stipulations. *Id.* (citing *Jack B. Anglin Co. v. Tipps*,

12

842 S.W.2d 266, 269 (Tex. 1992)). The trial court is only required to hold a hearing to resolve disputed facts. *Id.*

Where a hearing is necessary, the Texas Rules of Civil Procedure provide that a motion and notice of a hearing "must be served upon all other parties not less than three days before the time specified for the hearing, unless otherwise provided by these rules or shortened by the court." Tex. R. Civ. P. 21(b). A trial court is required to consider and rule upon a motion within a reasonable time. *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, orig. proceeding). When a motion is properly filed and pending before a trial court, the act of giving consideration to and ruling upon that motion is a ministerial act. *Id.* While an appellate court may not tell a trial court how to rule, mandamus may issue to compel a trial court to act on a properly filed and pending motion. *In re Blakeney*, 254 S.W.3d 659, 661 (Tex. App.—Texarkana 2008, orig. proceeding).

### 3. Analysis

Here, Spencer filed its Amended Motion after concerns regarding vagueness and rescission were raised at the hearing on the Motion. The reasons cited by Williams-Birdow in support of her motion to strike the Amended Motion were that "the deadline for amendments or responses to that motion ha[d] passed and [Spencer's] amendment was not timely" and that leave to amend the Motion was neither requested nor granted. Williams-Birdow cited no authority in support of her motion to strike. The record does not reflect that a hearing was set on the motion to

13

strike, but a hearing was set on the Amended Motion. However, the trial court struck the Amended Motion as well as the four-page Contract attached to Spencer's brief before any hearing was held.

On appeal, Williams-Birdow expands her argument supporting her motion to strike to state that a motion to compel arbitration filed pursuant to Texas Civil Practice & Remedies Code Section 171.023(b) cannot be amended except as allowed by Texas Rule of Civil Procedure 63. And because the Amended Motion was filed without leave of court and less than seven days from the two-week due date set by the trial court, the Amended Motion and additional evidence "were a complete surprise" to her. She concludes that "[t]his conduct is expressly prohibited by Texas Rule of Civil Procedure 63," and therefore, the trial court did not abuse its discretion in striking the Amended Motion.

But Williams-Birdow's argument misconstrues the nature of the Amended Motion filed by Spencer. The Amended Motion was a new motion with new evidence and arguments which was set for a new hearing. *See* Tex. R. Civ. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause . . . ."); *see also FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) ("Our rules provide that amended pleadings and their contents take the place of prior pleadings."). It was neither a disguised motion for rehearing nor a supplement to the original Motion. *See 21st Mortg. Corp. v. Moore,*

14

No. 11-17-00167-CV, 2019 WL 150953, at *2 (Tex. App.—Eastland Jan. 10, 2019, no pet.) (mem. op.) ("Because the second motion to compel arbitration arose from a different arbitration agreement and it involved a new argument, it constituted a distinct motion to compel arbitration rather than a motion to reconsider the previous motion to compel arbitration."). As evidenced by the record in this case, a new hearing was set more than thirty days from the filing of the Amended Motion and well before the pending trial date.

The crux of Williams-Birdow's argument is that a summary-judgment proceeding is a "trial" within the meaning of Rule 63; under Section 171.023(b), a hearing on a motion to compel arbitration is a trial; and therefore, application of Rule 63 supports striking the Amended Motion and evidence. Williams-Birdow relies on the language in Section 171.023(b) which provides that "[i]f there is a substantial bona fide dispute as to whether an agreement to arbitrate exists, the court shall try the issue promptly and summarily," as well as Texas Rule of Civil Procedure 63, which provides:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

15

Tex. R. Civ. P. 63.[5] However, neither of these rules support striking the Amended Motion.

Williams-Birdow contends that just as a summary-judgment proceeding is a trial within the meaning of Rule 63, *Goswami v. Metro. Sa. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988), a hearing on a motion to compel arbitration equates to a trial. But a hearing on a motion to compel arbitration is neither a trial nor a summary-judgment proceeding. Rather, it has been described as a "pretrial matter" and a "summary proceeding." *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding) (stating that Texas procedural rules call for determination of arbitrability by "summary proceedings"); *Wright v. Hernandez*, 469 S.W.3d 744, 753 (Tex. App.—El Paso 2015, no pet.) ("[A] proceeding on a motion to compel arbitration is a pretrial matter, and [ ] the civil rules governing jury trials are inapplicable."); *see also Coyle v. Coyle Fam. Farm, Inc.*, No. 04-18-00457-CV, 2019 WL 2110692, at *2 (Tex. App.—San Antonio May 15, 2019, no pet.) (mem. op.) (holding that a motion to compel arbitration does not require twenty-one days' notice of the hearing because it "is not the equivalent of a summary judgment motion but is simply a pre-trial motion"). Accordingly, Rule 63's prohibition of certain amendments without leave of court does not apply.

---

[5]At the time of the hearing on the Motion, trial was set for July 11, 2022. According to Spencer, there were no other orders in the case under Texas Rule of Civil Procedure 166.

Moreover, even if a motion to compel arbitration could be equated to a motion for summary judgment, an amended or new motion for summary judgment can be filed after a previous motion for summary judgment is denied. *See Rentfro v. Cavazos*, No. 04-10-00617-CV, 2012 WL 566364, at \*14 (Tex. App.—San Antonio Feb. 12, 2012, pet. denied) (mem. op.) ("It is certainly possible that a summary judgment movant might not have sufficient evidence to establish an affirmative defense as a matter of law when the motion for summary judgment is first filed, but this does not mean that prior to the entry of any final judgment such evidence might not become available, allowing the movant to amend, refile, or reurge the motion for summary judgment based on additional evidence."). And if the trial court denies a summary judgment, it has authority to later reconsider and grant a motion for summary judgment or change or modify the original order. *See Ravkind v. Mortg. Funding Corp.*, 881 S.W.2d 203, 205 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Bennett v. State Nat'l Bank*, 623 S.W.2d 719, 721 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *R.I.O. Sys. v. Union Carbide*, 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1989, writ denied).

Because the trial court should have considered the Amended Motion even if the original Motion was denied, we next address whether striking the Amended Motion was an abuse of the trial court's discretion. In an analogous situation, a sister court held that it was. In *Lucchese Boot Co. v. Licon*, 388 S.W.3d 365 (Tex. App.—El Paso 2012, no pet.), the appellant argued that the trial court had abused its discretion

by striking its amended motion to compel arbitration and by refusing to compel arbitration. *Id.* at 372. In making its decision, the court first looked at different authorities allowing pleadings to be stricken. *Id.*

> Under the Rules of Civil Procedure, courts are authorized to strike a party's pleadings in a limited variety of situations. For example, a court is required to strike a party's pleadings under Tex. R. Civ. P. 12 if an attorney fails to show sufficient authority to prosecute or defend a suit on behalf of a party and no party who is authorized to prosecute or defend appears. A court may strike a groundless and false pleading. Tex. R. Civ. P. 13. A court is also authorized to strike a third party claim. Tex. R. Civ. P. 38(a). A plea in intervention is subject to being stricken by the court for sufficient cause on the motion of any party. Tex. R. Civ. P. 60. As another example, a court may strike a pleading filed after a deadline imposed by a pre-trial order. *See* Tex. R. Civ. P. 166(p). The Rules of Civil Procedure also authorize trial courts to sanction a party for failure to comply with a discovery request by striking pleadings or by entering an order refusing to allow the disobedient party from supporting designated claims or defenses, or prohibiting him from introducing designated matters in evidence. Tex. R. Civ. P. 215.2(b)(5).

*Id.* The court noted that the party opposing arbitration had urged the trial court to strike the amended motion to compel arbitration and refuse to consider evidence attached to the motion based on (1) waiver of the right to assert the new grounds alleged in the amended motion, (2) failure to exercise due diligence in presenting new arguments and evidence, and (3) estoppel from reopening the arbitration issue. *Id.* at 372–73. Notably, the party opposing arbitration urged that, pursuant to Texas Rule of Civil Procedure 270 (which provides in part "that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury"), the arbitration movant "could not 'reopen' the arbitration issue and introduce new evidence." *Id.*

18

at 374. Rejecting all of these arguments and specifically finding that Rule 270 was inapplicable to a motion to compel arbitration, the El Paso court concluded that the trial court abused its discretion by granting the motion to strike. *Id.* at 376; *see Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 354 (Tex. App.—El Paso 2012, no pet.) (same); *Lucchese, Inc. v. Rodriguez*, 388 S.W.3d 354, 365 (Tex. App.—El Paso 2012, no pet.) (same).

Similarly, here, none of the arguments made by Williams-Birdow support the trial court's order striking the Amended Motion. Accordingly, we conclude that the trial court abused its discretion by granting the motion to strike and not considering the Amended Motion. *See Approximately $1,589.00 v. State*, 230 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that trial court erred by refusing to hear motion to strike deemed admissions). We sustain Spencer's first issue.

With regard to the struck evidence, Williams-Birdow relies on Texas Rule of Evidence 803(6) and 902(10) to support her argument that the trial court did not abuse its discretion because Spencer "simply attached" the Contract to its brief and "wholly failed to include any sort of business records affidavit to self-authenticate their alleged complete arbitration agreement." Spencer responds that this argument is "contrary to the record and to controlling law" and is not properly raised on appeal due to Williams-Birdow's failure to obtain rulings on her objections. We agree.

First, Williams-Birdow misstates the evidence. In both its original Motion and the Amended Motion, Spencer provided affidavit testimony of Lynch to prove up the

19

Contract. Lynch attested to his "personal knowledge of the goods and services that funeral homes owned by SCI, including [Spencer], offer and sell" and his personal knowledge of how the contracts "extended and executed" by Spencer operate. He attached a copy of the Contract to both affidavits. In his second affidavit, he added,

> Pages 3 and 4 of the Contract are labeled "Terms and Conditions." These pages 3 and 4 to the Contract were and are standard for every agreement on Form FUN0099 REV (01/07) that SCI funeral homes, including [Spencer], provided and provide to customers. Pages 3 and 4 were part of the agreement executed by [Williams-Birdow]. In 2018, at the time of the execution of the Contract, pages 3 and 4 would have been provided to every customer entering a Statement of Funeral Goods and Services Selected/Purchase Agreement, just like the Contract with [Williams-Birdow].

*See In re Estate of Guerrero*, 465 S.W.3d 693, 703–04 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (stating that evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment and that a "properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence"); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 511 (Tex. App.—El Paso 2010, no pet.) ("The construction loan, mortgage note, and guaranty agreement were admissible because, as contracts, they have legal effect independent of the truth of any statements contained therein and are not hearsay."); *Ltd. Logistics Servs., Inc. v. Villegas*, 268 S.W.3d 141, 146 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("Moreover, a party to a contract will not normally prevail on a hearsay objection to a contract because a signed instrument, such as a contract, that

20

creates legal rights is not hearsay because it has the legal effect independent of the truth of any statement contained in it.").

By striking the Contract, the trial court never ruled on Williams-Birdow's objections. As a result, they are waived and may not be urged on appeal. *Nationwide Coin & Bullion Rsrv., Inc. v. Thomas*, 625 S.W.3d 498, 504 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). We sustain Spencer's second issue.

## B. Denying the Motion to Compel Arbitration

In its third issue, Spencer argues that the trial court erred by denying its Motion "because the record shows that, as a matter of law, Williams[-Birdow] and Spencer were parties to an agreement containing a valid arbitration clause; this suit is within the scope of the arbitration clause; and no valid defense to arbitration was provided by Williams[-Birdow]." Therefore, according to Spencer's fourth issue, we "should determine *de novo* that the arbitration agreement is enforceable and compel arbitration."

### 1. Standard of Review for a Motion to Compel Arbitration

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, 139 S. Ct. 184 (2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.* A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts

without reference to any guiding rules or principles. *In re Copart*, 619 S.W.3d 710, 713 (Tex. 2021) (orig. proceeding); *Downer*, 701 S.W.2d at 241–42. A trial court has no discretion in determining what the law is or in applying the law to the facts. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875–76 (Tex. 2021) (orig. proceeding). Where, as here, the trial court did not issue findings of fact or conclusions of law to explain its denial of a motion to compel arbitration, we must uphold the trial court's decision on any appropriate legal theory urged below. *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.).

### 2. Applicable Law for Compelling Arbitration

"A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry*, 551 S.W.3d at 115 (citing *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014)). We determine whether a claim falls within the scope of an arbitration agreement by examining the facts alleged in the plaintiff's petition and the terms of the arbitration agreement. *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.) (citing *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding)). If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement. *Id.*

### 3. Analysis

After Spencer filed its Motion, Williams-Birdow filed a response raising multiple challenges to the arbitration agreement, including that it did not meet certain requirements under the Federal Arbitration Act or the Texas Arbitration Act, that it was unconscionable, that it was vague, and that Spencer had waived arbitration by substantially invoking the judicial process. At the hearing, Williams-Birdow concentrated on her allegation that the two-page Contract was "vague" and incomplete. On appeal, she expands that argument, noting that the two-page Contract "does not provide the forum for arbitration, the rules applicable to this arbitration, whether there will be a single arbitrator or a panel, whether the arbitration is binding or not, or any other essential element to define the duties and obligations of the parties in this proceeding." Further, she argues that the Contract was "unilaterally rescinded" by Spencer and therefore void. In response, Spencer relies on the "evidentiary record developed in the briefing of Spencer's Amended Motion" to show that the trial court erred in denying arbitration. However, the trial court never heard the Amended Motion, and Spencer is limited to the record developed on the original Motion.

As set out above, Spencer's initial burden on its Motion was to establish the existence of a valid arbitration agreement between itself and Williams-Birdow. *See Henry*, 551 S.W.3d at 115. At the hearing on Spencer's Motion, Williams-Birdow argued that Spencer did not establish the existence of a valid arbitration agreement

23

because the two-page Contract was "vague" or incomplete. In addition, she argued that the Contract had been rescinded. By providing a four-page Contract in its Amended Motion, Spencer implicitly acknowledged that it failed to provide the complete Contract in its Motion.

Even in its brief on appeal, Spencer repeatedly refers to the "missing pages" of the Contract and acknowledges that it filed the Amended Motion after finding the "missing pages" and "to assure that the record was clear and complete." Moreover, Spencer distinguishes between the "incomplete Contract" provided in its initial Motion and the "complete Contact" tendered with its Amended Motion. Spencer further acknowledges that the "effect of the May 18 Order [striking the Amended Motion and evidence] is to deny Spencer the opportunity to establish the existence of a valid arbitration agreement" and "a correct legal analysis must consider and construe the complete Contract submitted with the Amended Motion to Compel." We agree.

While there is a strong presumption in favor of arbitration, it arises only after a valid arbitration agreement is proven to exist. *Wright*, 469 S.W.3d at 751. As set out above, the trial court never construed the complete Contract because an order was entered striking the complete Contract and Amended Motion. It is clear that a trial court must examine the parties' entire agreement to construe an arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *United Healthcare of Tex., Inc. v. Low-T Physicians Serv., P.LL.C.*, No. 02-20-00033-CV, 2021 WL 210846, at *5–6 (Tex. App.—Fort Worth Jan. 21, 2021, no pet.) (mem. op.). By

24

failing to attach the complete four-page Contract to its original Motion or to offer the four-page Contract into evidence at the hearing, Spencer failed to meet its initial burden to establish the existence of a valid arbitration agreement. *See Henry*, 551 S.W. 3d at 115; *see also Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *7 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (mem. op.) (affirming trial court's denial of motion to compel arbitration where movant did not conclusively establish existence of agreement and did not request evidentiary hearing).

Moreover, the trial court never ruled on any of Williams-Birdow's defenses to arbitration. While Spencer spends twenty-six pages on appeal arguing why all of the defenses lack merit, the trial court failed to address any of the defenses except rescission. And as pointed out at the hearing, the rescission issue only arose the previous day at a deposition. Evidence pertinent to that defense was attached to briefs and motions filed *after* the hearing. The trial court never ruled on any of these matters, and we express no opinion on the merits of them or any other issue raised by the parties. *See Solano*, 388 S.W.3d at 354 n.3 ("In the event Solano raises the discovery sanction issue on remand to the trial court, our opinion should not be read as expressing any opinion on the merits of that issue.").

While Spencer argues in its brief that the "evidentiary record . . . is complete" and shows that this court should reverse and render judgment compelling the parties to arbitration, the record is anything but complete. Because the trial court refused to

25

hear Spencer's Amended Motion and consider the Contract, we do not know what evidence a complete record might have contained relative to the arguments made by both parties. In addition, although requested, the trial court did not file findings of fact or conclusions of law. We overrule Spencer's third and fourth issues.

## IV. CONCLUSION

Having overruled Spencer's third and fourth issues, but having sustained its first and second issues, we reverse the trial court's order striking Spencer's Amended Motion and evidence and remand to the trial court for proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d).

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 2, 2023

26